**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| VISUAL DYNAMICS, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 16-5287TLB |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CHAOS SOFTWARE LTD. | ) | |
| and CHAOS GROUP, LLC, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM
OF CHAOS SOFTWARE LTD. AND CHAOS GROUP, LLC**

Defendants/Counter-Plaintiffs Chaos Software Ltd. and Chaos Group, LLC (collectively, "Defendants" or "Counter-Plaintiffs") answer Plaintiff/Counter-Defendant's Complaint as follows, and unless specifically admitted herein, denies each and every allegation of the Complaint:

**THE PARTIES**

1.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint and, thus, deny the allegations.

2.      Defendants admit the allegations in paragraph 2.

3.      Defendants admit that Chaos Group LLC is organized under the laws of Maryland at the principal place of business given in paragraph 3 of the Complaint. Defendants deny that Chaos Group LLC is wholly owned *directly* by the Separate Defendant Chaos Software Ltd. Instead, Chaos Group, LLC, is wholly owned by Chaos Group Holdings, which is in turn wholly owned by Chaos Software Ltd. Defendants also deny that both Defendants collectively do

business together as the "Chaos Group" around the world.  Only Chaos Software Ltd. does business using the trade name "Chaos Group."

## JURISDICTION AND VENUE

4.      Paragraph 4 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendants admit the allegations in paragraph 4 of the Complaint.

5.      Paragraph 5 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny that Chaos Software Ltd. entered into "several" contractual relationships with Plaintiff.  Rather, Defendant Chaos Software Ltd. and Plaintiff entered into a Software Product Distribution Agreement and Non-Disclosure Agreement on May 26, 2011, and a Hardware Product Distribution Agreement on January 23, 2012.  Defendant Chaos Software Ltd. terminated its contractual relationship with Plaintiff effective November 9, 2012.  Defendants are without knowledge or information sufficient to form a belief as to the remainder of the allegations in paragraph 5 of the Complaint and, therefore, deny these allegations.

6.      Paragraph 6 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendants admit the allegations in paragraph 6 of the Complaint.

## FACTUAL BACKGROUND

7.      Defendants deny that distributors necessarily contract with sub-distributors; some distributors may sell Products sold under the **V-RAY** name and mark directly to end users. Defendants otherwise admit the allegations in paragraph 7 of the Complaint.

8.      Defendants admit the allegations in paragraph 8 of the Complaint.

9.    Defendants do not dispute that Plaintiff served as a reseller for Defendants from May 2011 until November 2012 under a Software Product Distribution Agreement; however, the parties entered into the Hardware Distribution Agreement on January 23, 2012.   Therefore, Defendants deny that Plaintiff operated under the Hardware Distribution Agreement before January 23, 2012.  Defendants admit the remaining allegations in paragraph 9 of the Complaint.

10.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint and, thus, deny the allegations.

11.    Denied.

12.    Defendants admit the allegations in paragraph 12 of the Complaint.

13.    Defendants deny their allegations were baseless.   Defendants are without knowledge or information sufficient to form a belief as to when Plaintiff purchased or developed the VRay.com site and, thus, deny the allegations.  Defendants admit the remaining allegations in paragraph 13 of the Complaint.

14.    Defendants deny that they stated "they *were* 'glad to see your efforts and devotion in distributing and growing the popularity of our products"; rather, an employee of Defendants stated, "We *will be* glad to see your efforts and devotion in distributing and growing the popularity of our products" *if* Plaintiff began selling Defendants' products as a sub-reseller (emphasis added).   The context of that communication was Defendants denying Plaintiff's request to become a reseller and suggesting Plaintiff seek opportunities to become a sub-reseller. Defendants admit the remaining allegations in paragraph 14 of the Complaint.

15.    Defendants deny that they promised they would authorize Plaintiff as a reseller or give bigger discounts to resellers who invested significant effort and money into growing sales.

Defendants admit only that they suggested Plaintiff seek opportunities to become a sub-reseller after they denied Plaintiff's application to become a reseller.

16.     Defendants deny they gave any assurances on which Plaintiff could rely. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16 of the Complaint and, thus, deny the allegations.

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint and, thus, deny the allegations.

18.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint and, thus, deny the allegations.

19.     Defendants admit the allegations in paragraph 19 of the Complaint.

20.     Defendants deny that entering into the Hardware Product Distribution Agreement "enhanced" Plaintiff's reseller relationship but otherwise admit the allegations in paragraph 20 of the Complaint.

21.     Defendants admit that Plaintiff has refused to disable the VRay.com website and transfer the domain to Defendants.  Defendants deny that they encouraged Plaintiff to spend a "massive amount of time, money and energy" into developing the website or that it was done with their full knowledge.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21 of the Complaint and, thus, deny the allegations.

22.     Denied.

23.     Defendants admit that an employee of Defendants made the statements attributed to him in paragraph 23 of the Complaint.  Defendants deny that the employee "blamed" Plaintiff, that the email stated anything misleading, and that the email made the implication alleged in paragraph 23 of the Complaint.

24.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint and, thus, deny the allegations.

25.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint and, thus, deny the allegations.

26.     Denied.

27.     Denied.

28.     Defendants admit that they do not list Plaintiff as a sub-reseller on their website because they do not list *any* U.S. sub-resellers on their website.  Defendants list only authorized resellers on their website, and Plaintiff is not an authorized reseller.  Defendants deny the remaining allegations in paragraph 28 of the Complaint.

29.     Denied.

30.     Denied.

**COUNT I:**
**INTERFERENCE WITH BUSINESS EXPECTANCY**

31.     Defendants re-allege their answers to paragraphs 1–30.

32.     Paragraph 32 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

33.     Denied.

5

34. Denied.

35. Denied.

36. Denied.

37. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 and, thus, deny the allegations.

38. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 and, thus, deny the allegations.

**COUNT II:**
**CIVIL CONSPIRACY**

39. Defendants re-allege their answers to paragraphs 1–38.

40. Denied.

41. Denied.

42. Denied.

**COUNT III:**
**PRELIMINARY INJUNCTION**

43. Defendants re-allege their answers to paragraphs 1–42.

44. Defendants do not dispute that Plaintiff filed a Complaint for tortious interference with business expectancy and civil conspiracy; Defendants deny that Plaintiff is likely to succeed on the merits of these claims.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49.     Paragraph 49 contains Plaintiff's demand for a jury trial, which does not require a response.  To the extent a response is required, Defendant also demands a jury trial.

Defendants deny that Plaintiff is entitled to any relief requested in the WHEREFORE clause, including all subparts (A) through (C), following paragraph 49 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff failed to state a claim upon which relief can be granted for each of the claims in the Complaint.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff cannot show that Defendants committed tortious interference with Plaintiff's business expectancy because Defendants' conduct in protecting their pre-existing interests in good faith is privileged.

### THIRD AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, because Defendants terminated their relationship with Plaintiff as an authorized reseller effective November 9, 2012.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff cannot show that Defendants interfered with Plaintiff's business expectancy because Plaintiff has no right to hold itself out as an authorized reseller of Defendants' products and therefore has no business expectancy.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff cannot show that Defendants interfered with Plaintiff's business expectancy because Plaintiff has no right to use Defendants' trademark.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed to meet the elements necessary for a claim of civil conspiracy.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to meet the standard to justify a preliminary injunction.  Specifically, Plaintiff has failed to show a likelihood of success on the merits, threat of irreparable harm, that the supposed harm to Plaintiff outweighs the harm to Defendants if the injunction were granted, and that issuing the injunction would be in the public interest.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's unauthorized use of Defendants' trademark and Plaintiff's actions holding itself out as Defendants' authorized reseller caused confusion and irritation among customers, which is the sole proximate cause of Plaintiff's damages, and, therefore, Plaintiff is totally barred from recovery herein.

## NINTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, because the Plaintiff failed to mitigate its damages.

## TENTH AFFIRMATIVE DEFENSE

The Plaintiff's claims are barred, in whole or in part, because Defendants at all relevant times engaged in all relevant activities in good faith.

Defendants reserve the right to add defenses as discovery and investigation proceed.

## COUNTERCLAIM

Defendants/Counter-Plaintiffs Chaos Software Ltd. and Chaos Group, LLC (collectively, "Defendants" or "Counter-Plaintiffs") bring this counterclaim against Plaintiff/Counter-Defendant Visual Dynamics, LLC, and allege as follows:

### I.     THE PARTIES

1.      Counter-Plaintiff Chaos Software Ltd. is a Bulgarian company with its principal place of business in Sofia, Bulgaria.

2.      Counter-Plaintiff Chaos Group, LLC is organized under the laws of the State of Maryland, with its principal place of business in Baltimore, Maryland, and is wholly owned by Chaos Group Holdings, which in turn is wholly owned by Chaos Software Ltd.

3.      Counter-Plaintiffs have offices in Sofia, Bulgaria; Los Angeles, California; Baltimore, Maryland; Seoul, Korea; and Tokyo, Japan.

4.      Counter-Defendant Visual Dynamics, LLC, based upon information and belief, is organized under the laws of the State of Arkansas with its principal place of business in Springdale, Arkansas.

### II.     JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 under diversity of citizenship in that the parties to this lawsuit have complete diversity and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this counterclaim arose in the Western District of Arkansas.

### III.     FACTUAL BACKGROUND

7. Since it was founded in 1997, Chaos Group has become a world leader in creating and selling rendering and simulation software used by top design studios, architectural firms, advertising agencies, and visual effects companies around the world. The software allows users to create "photoreal" imagery and animation for design purposes or for use in television and feature films.

8. One of Chaos Group's rendering software products is sold under the **V-RAY** name and mark, which was first registered as a trademark with the U.S. Patent and Trademark Office on March 20, 2007.

9. Chaos Software Ltd. is the owner of U.S. Trademark Registration No. 4,188,554 **V-RAY & Design**, which is valid and enforceable.

10. Chaos Software Ltd. is the owner of U.S. Trademark Registration No. 3,220,251 **V-RAY & Design**, which is valid, enforceable and incontestable.

11. Scott Slauson of Visual Dynamics first contacted Chaos Group via email on October 1, 2008, stating that he would like to become a reseller of Products sold under the **V-RAY** name and mark. Chaos Group denied Visual Dynamic's application to become a reseller on October 8, 2008. Chaos Group said it already had seven resellers in the United States and did not want to oversaturate the market. In that same correspondence, Chaos Group suggested Visual Dynamics contact any of Chaos Group's resellers in the United States if it would like to become a sub-reseller.

12. Chaos Group does not contract directly with sub-resellers. It contracts only with resellers, who might, in turn, enter into contracts with sub-resellers.

13. Chaos Group lists all of its authorized U.S. resellers on its website at www.chaosgroup.com/resellers. It does not list U.S. sub-resellers on its website.

14.    During this October 2008 correspondence, Visual Dynamics said it was developing the website VRay.com in preparation for selling Products sold under the **V-RAY** name and mark.  Chaos Group said that, if Visual Dynamics became a sub-reseller, Chaos Group could offer "full support from sales, marketing and technical support departments" and could send Visual Dynamics materials for the website.

15.    Visual Dynamics began selling Products sold under the V-Ray name and mark as a sub-reseller and contacted Chaos Group on January 20, 2009, and on February 16, 2009, again asking to become an authorized reseller.  Chaos Group again denied the request on March 16, 2009.  In its denial letter, Chaos stated, "since You are not our direct reseller we would like You to erase all the posted Chaos Software logos (if there are any posted on your site) and clearly to explain that the site is not a property of Chaos Software and we are not connected with it."

16.    Visual Dynamics again requested to become an authorized reseller on April 23, 2010.  A Chaos sales representative responded that it would raise the question again with its sales manager, but it does not appear any further responses followed.

17.    ASGVIS was an authorized reseller of Products sold under the V-Ray name and mark.  Visual Dynamics entered into a contract with ASGVIS on October 27, 2008, to become a sub-reseller under ASGVIS.  In 2011, Chaos Group purchased ASGVIS, and all existing sub-reseller agreements under ASGVIS were transferred to and re-signed with Chaos Group.  As a sub-reseller under ASGVIS, Visual Dynamics re-signed with Chaos Group.  That is the only reason Visual Dynamics came to be a reseller with Chaos Group.

18.    As a consequence to Chaos Group's purchase of ASGVIS, Visual Dynamics entered into a Software Product Distribution Agreement and Non-Disclosure Agreement with

Chaos Software, Ltd. on May 26, 2011, and a Hardware Product Distribution Agreement on January 23, 2012 (collectively, the "Agreement").

19.     During the year and a half that Visual Dynamics served as an authorized reseller, Chaos Group received numerous complaints about Visual Dynamics.

20.     Chaos Group notified Visual Dynamics on October 11, 2012, that it intended to terminate the Agreement, effective November 9, 2012.  The notice stated, "The reasons for the termination of the current agreement is the decreasing levels of revenue made by your company and the negative reports about the poor technical support you provide to the customers."

21.     Based upon information and belief, Visual Dynamics has continued to sell Products sold under the **V-RAY** name and mark as a sub-reseller since the termination of the Agreement.  It is not an authorized reseller of Products sold under the **V-RAY** name and mark, nor has it been since the termination of the Agreement.

22.     Despite not being an authorized reseller, Visual Dynamics refers to itself as a "reseller" on its "About Us" page on its website.

23.     Visual Dynamics currently still operates a website domain address titled VRay.com.  The top of the home page states, "VRay.com - Your source for all things V-Ray."  The website contains a disclaimer that reads, "V-Ray is a trademark of Chaos Software Ltd.  The official source of information on V-Ray is chaosgroup.com.  This site is not affiliated with chaosgroup.com."

24.     Visual Dynamics' continued use of the VRay.com website has caused significant confusion and frustration among customers.  Dozens of customers have contacted Chaos Group with complaints about the service they received from Visual Dynamics, both during the period in which Visual Dynamics served as an authorized reseller and after the Agreement was terminated.

Sometimes customers believed vray.com was operated by Chaos Group or that Visual Dynamics was a subsidiary of Chaos Group.

## IV.    CAUSES OF ACTION

### COUNT I –STATUTORY TRADEMARK INFRINGEMENT
*Violation of 15 U.S.C. § 1051 et seq.* (**"***Lanham Act***"**)

25.    Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–24, inclusive, as though set forth verbatim herein.

26.    The trademark name **V-RAY** is a corporate, business, and/or professional name used by Counter-Plaintiffs since 2007.  Counter-Plaintiffs have federally registered the **V-RAY** mark as a proprietary trademark and as intellectual property belonging to Counter-Plaintiffs. Because Counter-Plaintiffs advertise, distribute, and market all of their products with the **V-RAY** name, the trademark **V-RAY** is synonymous with state-of-the-art professional rendering software worldwide.

27.    Customers who purchase Products sold under the **V-RAY** name and mark have come to rely on and understand that the trademark name **V-RAY** designates those certain products as signifying a degree of particular quality, superior customer and technical support, and/or professionalism capable of being generated solely by Counter-Plaintiff.  As a direct and proximate result of Counter-Defendant's actions, Counter-Defendant is likely to cause, and has in fact caused, consumer confusion or mistake by misleading members of the public as to the source, origin, affiliation, or sponsorship of Counter-Plaintiffs and the products sold under the **V-RAY** name and mark offered by Visual Dynamics.

28.    Counter-Defendant has persisted in its wrongful usage of the website domain name **VRay.com**, despite Counter-Plaintiffs' demand that Counter-Defendant immediately cease and desist all further and future commercial activities in connection with the trademark name **V-**

**RAY**.   Counter-Defendant, with constructive and actual knowledge of Counter-Plaintiffs' designation and protected proprietary interests to the name **V-RAY**, has failed and refused to cease and desist usage of **VRay.com** and to transfer all electronic access and purported rights to the domain name **VRay.com** to Counter-Plaintiffs and Counter-Plaintiffs' authorized agents, attorneys, employees, and representatives.

29.   Counter-Defendant has persisted in holding itself out as an authorized reseller when in fact that relationship was terminated in November 2012.  Counter-Defendant states on its website that it is the "source for all things V-Ray" and refers to itself as a "reseller."  Counter-Defendant continues to fully incorporate the **V-RAY** mark on its website and offer the demo version of Counter-Plaintiffs' products, confusingly suggesting to customers that it is an authorized reseller of Products sold under the **V-RAY** name and mark or perhaps even a subsidiary of Counter-Plaintiffs, when in fact it has no formal relationship with Counter-Plaintiffs and is not an authorized reseller.

30.   As a direct and proximate result of the Counter-Defendant's continued wrongful acts and practices in violation of statutory and common trademark laws of the United States, Counter-Plaintiffs, in addition to their monetary damages, have suffered and will continue to suffer imminent and irreparable injury for which there is no adequate remedy at law.  Unless otherwise restrained or enjoined from further unlawful commercial activity in connection with the use of the **V-RAY** trademark name, the Defendant will likely continue to gain and/or realize substantial monetary profits otherwise lawfully belonging to Counter-Plaintiffs.  Counter-Plaintiffs, therefore, seek immediate entry of a temporary injunction prohibiting Counter-Defendant's further use of the name **V-RAY** and, moreover, requiring Counter-Defendant to transfer to Counter-Plaintiff all rights to the domain name **VRay.com**.

31.     Counter-Plaintiffs further seek the maximum lawful recovery of any and all actual or economic damages suffered as a direct and proximate result of Counter-Defendant's wrongful actions and practices under 15 U.S.C. § 1051 et seq., including, but not limited to: (1) any and all profits, monies, or other tangible benefits unjustly derived by Counter-Defendant through its (mis)use of Counter-Plaintiffs' trademark name; (2) any and all actual or economic damages sustained by Counter-Plaintiffs as provided for under applicable federal law; and (3) any and all costs of prosecuting the above-styled action, inclusive of attorneys' fees, professionals' fees, and costs of court. Counter-Plaintiffs, to the extent permissible under applicable law, furthermore seek an award by the trier of fact for treble damages in connection with the use of counterfeit markings or designation of the **V-RAY** trademark name.

**COUNT II – FEDERAL UNFAIR COMPETITION,**
**FALSE REPRESENTATION, AND FALSE DESIGNATION OF ORIGIN**
***Violation of 15 U.S.C. § 1125(a)***

32.     Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–31, inclusive, as though set forth verbatim herein.

33.     The acts complained of aforesaid actually deceive and are likely to deceive the public into believing, falsely, that Counter-Defendant's products are those of, sponsored or approved by, or are in some way connected with Counter-Plaintiffs, all to the irreparable injury of Counter-Plaintiffs' trade and goodwill and to the injury of the public.

34.     Counter-Defendant falsely states on its website that "Licensing and product registration [purchased through VRay.com] is identical to working directly with the developers" and that "we provide deep discounts and special offers that you don't receive when purchasing directly with the developers."   This is deceiving, in part, because Chaos Group ("the developers") does not sell its products directly to consumers; it sells its products only through

resellers. Therefore, Counter-Defendant's statement is a false comparison. Additionally, Counter-Defendant falsely gives the impression that it has a special relationship with Chaos Group, when in fact it has no relationship.

35. The aforesaid acts constitute federal unfair competition in the form of passing off, false representation, false advertising, and false designation of origin, all in direct violation of 15 U.S.C. § 1125(a).

**COUNT III – FEDERAL TRADEMARK DILUTION**
*Violation of 15 U.S.C. § 1125(c)*

36. Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–35, inclusive, as though set forth verbatim herein.

37. The acts complained of aforesaid are likely to cause dilution by blurring or dilution by tarnishment of Counter-Plaintiffs' mark.

38. The V-Ray mark is famous, as it is highly recognizable, generates millions of dollars in sales each year, and has extremely broad geographical reach, with authorized resellers in more than 90 countries. **V-RAY** is synonymous with high-quality professional rendering software.

39. Counter-Plaintiffs are entitled to an injunction against Counter-Defendant, as Counter-Defendant's continued use of the **V-RAY** mark and VRay.com domain name is likely to cause, and has in fact caused, confusion, which impairs the distinctiveness and harms the reputation of the **V-RAY** mark.

40. Upon information and belief, Counter-Defendant willfully intended to trade on the recognition of the **V-RAY** mark.

41. The aforesaid acts constitute federal unfair competition in the form of trademark dilution, all in direct violation of 15 U.S.C. § 1125(c).

## COUNT IV – FEDERAL ANTI-CYBERPIRACY
### *Violation of 15 U.S.C. § 1125(d)*

42.　　Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–41, inclusive, as though set forth verbatim herein.

43.　　Counter-Defendant exhibited a bad faith intent to profit from the **V-RAY** mark by registering, trafficking in, and using a domain name that is identical to the **V-RAY** mark (VRay.com), which Counter-Defendant registered for the express purpose of selling Counter-Plaintiffs' Products sold under the V-Ray name and mark.

44.　　As a direct and proximate result of Counter-Defendant's wrongful actions, Counter-Plaintiffs have suffered and will continue to suffer deprivation of the right and opportunity to use the VRay.com domain name, for which there is no adequate remedy at law. Counter-Plaintiffs are entitled to an injunction compelling Counter-Defendant to transfer the VRay.com domain name to Counter-Plaintiffs.

45.　　The aforesaid acts constitute federal cyberpiracy in the form of trademark dilution, all in direct violation of  15 U.S.C. § 1125(d).

## COUNT V – TRADEMARK INFRINGEMENT UNDER ARKANSAS LAW
### *Violation of Ark. Code Ann. § 4-71-212*

46.　　Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–45, inclusive, as though set forth verbatim herein.

47.　　This Court has supplemental jurisdiction over this cause of action and has jurisdiction pursuant to 28 U.S.C. § 1338(b).

48.　　Counter-Defendant used – without the consent of Counter-Plaintiffs as owners of the **V-RAY** mark and with the intent to confuse, mistake, or deceive – the **V-RAY** registered mark, in connection with the sale, distribution, offering for sale, and advertising of Products sold

under the V-Ray name and mark and in a manner that was likely to cause, and in fact did cause, confusion, mistake, or deception as to the source of origin of such products.  Upon information and belief, Counter-Defendant additionally used – with the intent to confuse, mistake, or deceive – the **V-RAY** registered mark on  labels, signs, prints, packages, wrappers, receptacles, or advertisements in connection with the sale of Products sold under the V-Ray name and mark.

49.      As a direct and proximate result of Counter-Defendant's wrongful actions, Counter-Plaintiffs have suffered and will continue to suffer irreparable injury to the goodwill associated with their trademark.

50.      The aforesaid acts constitute Arkansas trademark infringement, all in direct violation of  Arkansas Code Ann. § 4-71-212.

## COUNT VI – TRADEMARK INFRINGEMENT UNDER ARKANSAS COMMON LAW

51.      Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–50, inclusive, as though set forth verbatim herein.

52.      This Court has supplemental jurisdiction over this cause of action and has jurisdiction pursuant to 28 U.S.C. § 1338(b).

53.      Counter-Defendant's unauthorized use of Counter-Plaintiffs' **V-RAY** mark constitutes trademark infringement in violation of the common law of the State of Arkansas.

54.      As a direct and proximate result of Counter-Defendant's wrongful actions, Counter-Plaintiffs have suffered and will continue to suffer irreparable injury to the goodwill associated with their trademark.

55.      The aforesaid acts constitute common law Arkansas trademark infringement.

## COUNT VII – TRADEMARK DILUTION UNDER ARKANSAS LAW
### *Violation of Ark. Code Ann. § 4-71-213*

56.     Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–55, inclusive, as though set forth verbatim herein.

57.     This Court has supplemental jurisdiction over this cause of action and has jurisdiction pursuant to 28 U.S.C. § 1338(b).

58.     Counter-Plaintiffs registered the **V-RAY** mark before Counter-Defendant began using it for its own commercial benefit.

59.     Counter-Defendant's commercial use of Counter-Plaintiffs' famous **V-RAY** mark has caused and is likely to cause dilution of the distinctive quality of the mark.

60.     Based on information and belief, Counter-Defendant willfully intended to trade on Counter-Plaintiffs' reputation or to cause dilution of the **V-RAY** mark.

61.     As a direct and proximate result of Counter-Defendant's wrongful actions, Counter-Plaintiffs have suffered and will continue to suffer irreparable injury to the goodwill associated with their trademark.

62.     The aforesaid acts constitute Arkansas trademark dilution, all in direct violation of Arkansas Code Ann. § 4-71-213.

## COUNT VIII – DECEPTIVE TRADE PRACTICES UNDER ARKANSAS LAW
### *Violation of Ark. Code Ann. § 4-88-101 et seq.*

63.     Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–62, inclusive, as though set forth verbatim herein.

64.     This Court has supplemental jurisdiction over this cause of action and has jurisdiction pursuant to 28 U.S.C. § 1338(b).

65.     Counter-Defendant has knowingly made false representations as to the characteristics, source, sponsorship, approval, or certification of the Products it sells under the **V-RAY** name and mark.

66.     Counter-Defendant has disparaged the goods, services, or business of Counter-Plaintiffs by making false or misleading representation of fact.

67.     Counter-Defendant has engaged in other unconscionable, false, or deceptive acts or practices in business, commerce, or trade.

68.     As a direct and proximate result of Counter-Defendant's wrongful actions, Counter-Plaintiffs have suffered and will continue to suffer irreparable injury.

69.     As parties that have suffered actual damages or injury as a result of an offense or violation of the Arkansas Deceptive Trade Practices Act, Counter-Plaintiffs seek actual damages and reasonable attorney's fees under Arkansas Code Ann. § 4-88-101 et seq.

**COUNT IX – UNFAIR COMPETITION UNDER ARKANSAS COMMON LAW**

70.     Counter-Plaintiffs fully adopt, re-allege, and incorporate by reference each of the foregoing paragraphs, 1–69, inclusive, as though set forth verbatim herein.

71.     This Court has supplemental jurisdiction over this cause of action and has jurisdiction pursuant to 28 U.S.C. § 1338(b).

72.     Based on information and belief, Counter-Defendant has acted with the intent to deceive the public, for the purpose of misappropriation of Counter-Plaintiff's valuable goodwill and proprietary interest in the **V-RAY** mark, which constitutes unfair competition under the common law of the State of Arkansas.

73.     As a direct and proximate result of Counter-Defendant's wrongful actions, Counter-Plaintiffs have suffered and will continue to suffer irreparable injury.

74.     The aforesaid acts constitute common law Arkansas unfair competition.

**PRAYER FOR RELIEF**

WHEREFORE, Chaos Group, LLC, and Chaos Software, Ltd. respectfully request this Court:

A.      Enter judgment in favor of Chaos Group, LLC, and Chaos Software, Ltd., on all of Visual Dynamic's claims and dismiss the Complaint against them with prejudice;

B.      Enter judgment in favor of Chaos Group, LLC, and Chaos Software, Ltd. and against Visual Dynamics on the Counterclaims stated herein;

C.      Award damages to Chaos Group, LLC, and Chaos Software, Ltd. in an amount to be determined at trial against Visual Dynamics, jointly and severally;

D.      Award all reasonable and necessary attorneys' fees, professionals' fees, and costs or expenses of court incurred in prosecuting this counterclaim; and

E.      Declare all injunctive and equitable relief, general or specific, against Visual Dynamics to which Chaos Group, LLC, and Chaos Software, Ltd. may show themselves justly entitled.

Dated:  December 19, 2016               Respectfully submitted,

/s/  *Kerri E. Kobbeman*
Kerri E. Kobbeman
Ark. Bar No. 2008149
G. Alan Wooten
Ark. Bar No. 71083
CONNER & WINTERS, LLP
4375 North Vantage Drive, Suite 405
Fayetteville, AR 72703
Telephone: 479-582-5711
Facsimile: 479-587-1426
Email:  kkobbeman@cwlaw.com
Email: awooten@cwlaw.com

And

Thomas W. Brooke (*pro hac vice pending*)
D.C. Bar No. 430636
Cynthia A. Gierhart (*pro hac vice pending*)
D.C. Bar No. 1027690
HOLLAND & KNIGHT LLP
800   17th   Street   N.W.,   Suite   1100
Washington, DC 20006
202-663-7271
Email: thomas.brooke@hklaw.com
Email: cindy.gierhart@hklaw.com

***Attorneys for Defendants***
***Chaos Software Ltd.***
***and Chaos Group, LLC***

**CERTIFICATE OF SERVICE**

I, Kerri E. Kobbeman, an attorney, hereby certify that on December 19, 2016, I filed **Chaos Software Ltd. and Chaos Group, LLC's Answer, Affirmative Defenses, and Counterclaim** via the Court's electronic filing system and that service upon counsel for the plaintiff, Asa Hutchinson III, was accomplished pursuant to the ECF for filing users.

*/s/ Kerri E. Kobbeman*
Kerri E. Kobbeman